# United States District Court
# Western District of Pennsylvania

| | |
|---|---|
| Myron L. Van Tassel<br><br>        Plaintiff,<br><br>vs.<br><br>LIBERTY MORTGAGE, MIDFIRST BANK, MIDLAND MORTGAGE, A DIVISION OF MIDFIRST BANK., GOVERNMENT NATIONAL MORTGAGE ASSOCIATION, GINNIE MAE REMIC TRUST 1998-17;<br><br>DOES 1 through 10 inclusive<br><br>        Defendants | No. _____ 17-275 _____<br><br>PLAINTIFF'S PETITION FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF PURSUANT TO TITLE 28, US CODE SECTION 2201, 2202, 1331, 1332, 1367<br><br>TRIAL BY JURY DEMANDED<br><br>HEARINGS IN CHAMBER |

COMES NOW, Myron L. Van Tassel, Plaintiff the undersigned acting *Pro se,* proceeding to make the above captioned Complaint, and hereby shows cause;

## JURISDICTIONAL STATEMENT

1.    This Court has subject matter jurisdiction over this action because it presents one or more federal questions, 28 U.S.C. § 1331.

2.    Jurisdiction of this Court also arises under 28 U.S.C. § 1332(a) as there is diversity of citizenship among the parties and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

3.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the subject matter of the claims asserted by the Plaintiff' in the State of Pennsylvania in this action because

those claims are also related to the claims asserted by the Defendants that they form part of the same case or controversy, and because those claims arise out of the same transactions or occurrences as the action brought by the Plaintiff.

4.     Jurisdiction of this Court also arises under 15 U.S.C. § 1692 for Defendant's violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA").

5.     Therefore, Plaintiff wishes to invoke this Honorable Court's federal question jurisdiction as Plaintiff is bringing claims directly under Federal Statutes and Constitutional provisions as Plaintiff's state claims turn on a matter of Federal law.

6.     This Court has personal jurisdiction over the Defendants because the Defendants have transacted business in this District and the State of Pennsylvania and because the Defendants have committed acts herein detailed in this District and the State of Pennsylvania.

7.     At all times relevant to this action, Plaintiff has owned the Property located at 149 E. Third Street, Waterford, PA 16441, also hereinafter referred to as the "Property".

## VENUE

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES
## PLAINTIFF

9.     Myron Van Tassel, Plaintiff, hereinafter also referred to as "Van Tassel" is a natural person that owns the real property in Oklahoma City, OR which is subject to the controversy. The Plaintiff has suffered damages due to the action(s) of the Defendant(s) which are detailed herein.

## THE DEFENDANTS

10.    Defendant Liberty Mortgage Inc. Plaintiff is informed and believes, and thereon alleges that at all relevant times Liberty Mortgage Inc., is a portfolio lender and mortgage loan services provider. Liberty Mortgage Inc., is organized and existing under the laws of Georgia, with a principal place of business location in Richmond, Virginia.

11.    Defendant MidFirst Bank ("MidFirst"). Plaintiff is informed and believes, Defendant MidFirst is privately owned bank offering mortgage banking products and services. MidFirst is headquartered in Oklahoma City, Oklahoma.

12.    Defendant Midland Mortgage, a division of MidFirst. Plaintiff is informed and believes, is a homeowner loan servicing company headquartered in Oklahoma City, Oklahoma.

13.    Defendant Government Mortgage Association ("Ginnie Mae"). Plaintiff is informed and believes, Defendant Ginnie Mae is acting in the capacity of a trustee in its relationship to Defendant Ginnie Mae REMIC Trust 1998-17 and is headquartered in Washington, DC, with several regional offices nationwide.

14.    Defendant Ginnie Mae REMIC Trust 1998-17, Plaintiff is informed and believes is created as a trust and is governed by a trust agreement, Ginnie Mae as trustee.

15.    Plaintiff does not know the true names, capacities, or basis for liability for the Defendants sued herein as DOES 1 through 10, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in Plaintiff's property. Plaintiff will amend this Complaint to allege true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

16.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, representatives, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment, representatives and/or joint venture.

## INTRODUCTION

17.    This is an action brought by Plaintiff for declaratory judgment, injunctive and equitable relief, and for compensatory, punitive, special and general damages.

18.    Plaintiff, Myron Van Tassel, disputes the title and ownership of the real property in question, which is the subject of this action, in that the originating mortgage lender, and others alleged to claim ownership of Plaintiff's Promissory Note and Mortgage, have unlawfully sold, assigned and/or transferred his ownership and security interest in a Promissory Note and Mortgage related to Plaintiff's property, and thus, do not have lawful ownership or a security interest in Plaintiff's home which is further described in detail herein.

19.    Plaintiff, disputes the marketability, presence of cloud on title and alleged interest of the Defendants with regard to the real property in question, which is the subject of this action, in that the originating mortgage lender, and others alleged to claim ownership of Plaintiff's Promissory Note and/ or Mortgage, have unlawfully sold, assigned and/or transferred his ownership and security interest in a Promissory Note and Mortgage related to the Plaintiff's property, and thus, do not have lawful ownership or a security interest in Plaintiff's home which is further described in detail herein.

20.    During the financial crash of 2008-2009, over 60 million home loans were sold by originating lender banks to investment banks to be securitized[1] in a complex series of billions of transactions.  This process, known as securitization, has also been discovered to have occurred in the case of Plaintiff's home loan which originated June of 1998.

21.    The securitization procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit ("REMIC") Act were observed, and whereby the Issuing Entities and Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired 'bankruptcy remoteness" numerous "True Sales" of the loans had to occur, in which the loans were sold and transferred to the different parties to the securitization.

22.    Recently, upon learning of issues that were known to cloud title on property, Plaintiff began to query his alleged lender as to identify with regard to the lawful owners of his loan and determine whether Plaintiff would ever receive clear and marketable title to his own home once it was paid off.

23.    The subsequent responses from the alleged lender(s) were vague and ambiguous and did not answer the bona fide and lawful questions of Plaintiff, thereby raising Plaintiff's concerns about marketability, title and ownership of Plaintiff's property.

24.    Subsequently, Plaintiff used the only mechanism available which was to withhold payments until such time the lawful owner and creditor of the loan could be identified without a reasonable doubt.

---

[1] Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bind holders which were expected to be relatively safe.

25.     As a result Plaintiff was illegally and wrongfully foreclosed upon and Defendants are

proceeding to illegally to sell Plaintiff's property and evict Plaintiff thereby compounding

wrongful foreclosure with an illegal sale and eviction.

26.     Defendant's collection activities resulting in a wrongful foreclosure of Plaintiff's

property is contrary to Pennsylvania recordation statutes, U.S. TITLE CODES (U.S.C), FDCPA,

UNIFORM COMMERCIAL CODE (U.C.C.) statues as outlined herewith throughout and by

Plaintiff's causes and claims

27.     The Plaintiff has exhausted the available administrative remedies and now turns to this

Honorable Court to adjudicate this matter.


## STATEMENT OF THE CASE

28.     Plaintiff hereby invokes common law in this matter pursuant to Article Three, Section

Two of the US Constitution, see *Callan v. Wilson,* 127 U.S. 540, (1888) "And as the guaranty of

a trial by jury, in the third article, implied a trial in that mode, and according to the settled rules

of common law".

29.     Plaintiff contends the required conditions precedent to commence a foreclosure action

have not been met as Plaintiff's loan was not in default, and the parties required to declare any

alleged default have never done so.

30.     Plaintiff signed a Security Instrument (MORTGAGE) **EXHIBIT 1,** in favor of Liberty

Mortgage Corporation dated June 19, 1998.

31.     Defendants and their agents collectively breached and violated Plaintiff's Mortgage by

and through their participation in a wrongful foreclosure of Plaintiff's property, absent critical

and viable proof any of the Defendants have standing, are lawful holders/owners of the Note and Mortgage, and have acquired and maintained lawful, as opposed to simple, possession.

32.    The Defendants illegal actions are including, but not limited to their actions in the various foreclosure actions against Plaintiff.

33.    MidFirst., *et al.*, are being directed and/or conspiring with the other Defendant(s), *et al.*, by their intentional non-disclosure, misleading and untruthful statements, malfeasance, nonfeasance and misfeasance with regard to Plaintiff's Mortgage and loan including but not limited to actions involving Mortgage assignments, substitution of trustee(s), Notices of Default, where applicable violations of Pennsylvania Statutes Annotated, United States Title Codes (USC), Fair Debt Collection Practices Act (FDCPA) and Uniform Commercial Code Statutes.

34.    Through the actions of the Defendants, *et al.*, the Plaintiff's title has been slandered and he could not and will be unable to obtain clear title without resorting to extraordinary measures.

35.    The Defendants have deliberately sought to consummate a foreclosure and the sale is pending for Plaintiff from his property and home in absolute defiance of numerous provisions of the various Consent Orders, Oklahoma Revised Statutes and Federal law.

## CAUSES AND CLAIMS APPLICABLE TO THE NUMEROUS VIOLATIONS OF DEFENDANTS

36.    *The 14th Amendment to the United States Constitution, the Interests Protected: "Life, Liberty and Property".* To have a property interest in the constitutional sense, the Supreme Court held, it was not enough that one has an abstract need or desire for a benefit or a unilateral expectation. He must rather "have a legitimate claim of entitlement" to the benefit. "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of

entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972) (Emphasis added)

37.  The Fourth Amendment of the U.S. Constitution originally enforced the notion that "each man's home is his castle", secure from unreasonable...seizures of property by the government:

> *The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.*

While Plaintiff is not asserting government agencies are behind Defendant's wrongful foreclosure, Plaintiff points out that Defendants are using government records and benefits associated with commencing a foreclosure action as a means to wrongfully seize Plaintiff's property.  Defendant's actions of creating fraudulent public/county records and then using those records as a basis for commencing a foreclosure action (unjust enrichment) injures the Plaintiff and obfuscates the public record.

38.  Plaintiff likewise asserts that under the Fifth Amendment of the U.S. Constitution:

"...nor be deprived of life, liberty, or property, without due process of law..."

Here again, Plaintiff contends Defendants' actions are an attempt to deprive Plaintiff of his constitutional rights, by "stealing" Plaintiff's property. Defendants' intentional misrepresentation and failure to disclose transfers and sales of Plaintiff's Mortgage and Note to other parties and release of liability without Plaintiff's knowledge, while utilizing the benefits of a bank friendly legal environment is unconscionable.

39.  The Plaintiffs hereby invokes case common law in this matter pursuant to Article Three, Section Two of the US Constitution, see *Callan v. Wilson,* 127 U.S. 540, (1888) "And as the

guaranty of a trial by jury, in the third article, implied a trial in that mode, and according to the settled rules of common law".

**DEFENDANT MIDFIRST BANK IS NOT THE HOLDER OF THE NOTE**

40.     As shown in the **Chain of Title Analysis and Mortgage Fraud Investigation. Prepared By: Mortgage Compliance Investigations LLC, attached** hereto as **EXHIBIT 2**, Defendant MidFirst is not the holder of the Mortgage and Note entitled to enforce. *See* Excerpts from Exhibit 2 below (the paragraph numbers conform to the numbers in the document):

## SECTION 3: MORTGAGE FRAUD INVESTIGATION

**Chain of Title Analysis and Mortgage Fraud Investigation:**

The following Chain of Title details are a listing of the documents related to the property in chronological order. This chain of custody is necessary to maintain an "unbroken" chain at all times pursuant to State Law. We have investigated the documents that were recorded within the County Recorder's Office where the real property resides, as well as the documents that were NOT recorded within the County Recorder's Office but were made official by filing into public record as exhibits.

I have examined the following documents:

A. Copy of a purported Tangible Promissory Note of Myron L. Van Tassel, dated June 19, 1998, regarding a loan for $87,210.00. The Original Lender of the June 19, 1998 Van Tassel loan is Liberty Mortgage Corporation. (See Exhibit "A" attached within)

B. Copy of a Recorded document purporting to be the Tangible Mortgage of Myron L. Van Tassel, dated June 19, 1998 and filed in the Official Records of the Erie County Recorder's Office on June 22, 1998 as ins# 0569-0514. (see Exhibit "B" attached within)

C. Voluntary Lien Search pertaining to the Transaction Details for 149 E. Third Street, Waterford, PA 16441 which includes all publicly recorded documents filed in the Official Records of the Erie County Recorder's Office. (See Exhibit "C" attached within

D. Government National Mortgage Association (Ginnie Mae) Document Custodian Manual, Doc. 5500.3, Rev. 1, Appendix V-1, dated June 01, 2005

## An Examination of the Myron L. Van Tassel Mortgage Loan

## The Van Tassel Intangible Obligation was sold to Multiple Classes of the
## Guaranteed REMIC Pass-Through Securities Ginnie Mae REMIC Trust 1998-17 Trust
## shortly after the June 19, 1998 signing

1. On July 8, 2016, I researched Myron L. Van Tassel whose property address is 149 E. Third Street, Waterford, PA 16441. Myron L. Van Tassel had allegedly signed a Note in favor of Liberty Mortgage Corporation on June 19, 1998. This loan was identified in multiple classes of the Guaranteed REMIC Pass-Through Securities Ginnie Mae REMIC Trust 1998-17 (hereinafter "GNMA 1998-17") Trust. The loan is being serviced by Midland Mortgage, a division of MidFirst Bank.

2. The rights to the Van Tassel Intangible Obligation have been conveyed as a Transferable Record to multiple classes of the GNMA 1998-17 Trust. For the rights to the Van Tassel Intangible Obligation not to have been stripped away from the rights to the Van Tassel Note by that conveyance, the rights to the Van Tassel Note must have also been transferred to multiple classes of the GNMA 1998-17 Trust.

3. Even though the Van Tassel Intangible Obligation is owned by multiple classes of the GNMA 1998-17 Trust, it can only be determined if the original Van Tassel Note had been physically delivered to multiple classes of the GNMA 1998-17 Trust by checking with the custodian of documents. Until then, there is no evidence that multiple classes or even one class of the GNMA 1998-17 Trust possessed in any manner the Van Tassel Note before rights to the Van Tassel Intangible Obligation were stripped away shortly after the June 19, 1998 signing.

4. The rights to the Van Tassel Intangible Obligation have been conveyed as a Transferable Record to multiple classes of the GNMA 1998-17 Trust. For the conditions of Van Tassel Mortgage over the Van Tassel Intangible Obligation not to have been stripped away by that conveyance, the rights to the Van Tassel Mortgage must have also been transferred to multiple classes of the GNMA 1998-17 Trust.

5. The beneficial interest (ownership) of the Van Tassel Mortgage has been recorded in the Official Records of Erie County Recorder's Office as being in the name of Liberty Mortgage Corporation, the Original Lender of the loan dated June 19, 1998. However, it is clear that Liberty Mortgage Corporation sold all ownership interest in the Van Tassel Intangible Obligation to Government National Mortgage Association shortly after the June 19, 1998 signing. Interest in the Van Tassel Intangible Obligation is held in multiple classes of the GNMA 1998-17 Trust, and the payments under the Van Tassel Intangible Obligation are disbursed to the investors of GNMA 1998-17 Trust who hold certificates to the investment classes into which payments under the Van Tassel Intangible Obligation are scheduled to flow. Therefore, the transfer of beneficial interest in the Van Tassel Mortgage by Liberty Mortgage Corporation might be accomplished, but that beneficial interest is no longer attached to the rights to the Van Tassel Intangible Obligation.

**As Multiple Classes of the GNMA 1998-17 Trust have an Interest in the Van Tassel Intangible Obligation, Multiple Classes of the GNMA 1998-17 Trust Are Required to Have Interest in the Van Tassel Note and Interest in the Van Tassel Mortgage**

6. Ginnie Mae has purchased an interest in the Van Tassel Mortgage Loan and delivered that interest in the Van Tassel Mortgage Loan into the GNMA 1998-17 Trust and claims to have control of the Van Tassel Note and the Van Tassel Mortgage.

> Ginnie Mae states in its own June 2005 Ginnie Mae Document Custodian Manual, chapter 1, page 1:
>
> *The document custodian is required to certify to Ginnie Mae that the loans constituting the pools of mortgages (as collateral for Ginnie Mae securities) are represented by the documents placed in the document custodian's control. The document custodian performs this function through a process of pool certifications and re certifications.*

7. By multiple classes of the GNMA 1998-17 Trust purchasing the Van Tassel Intangible Obligation and doing with it whatever was done, multiple classes of the GNMA 1998-17 Trust were exercising rights of ownership over the Van Tassel Mortgage Loan and the payment stream. By exercising rights of ownership over the Van Tassel Mortgage Loan and the payment stream, multiple classes of the GNMA 1998-17 Trust were making a claim of rights to all three parts of the Van Tassel Mortgage Loan, a claim which is misplaced.

8. The Van Tassel Mortgage Loan only exists through the tangible instruments creating it, the Van Tassel Note and the Van Tassel Mortgage. The sale of the rights to the Van Tassel Intangible Obligation to multiple classes of the GNMA 1998-17 Trust without stripping away the rights to the Van Tassel Intangible Obligation from the rights to the Van Tassel Note could only be accomplished with the accompanying negotiation of the Van Tassel Note and the accompanying assignment of the Van Tassel Mortgage to the multiple classes of the GNMA 1998-17 Trust which is a legal impossibility. Whereas the Trust as a standalone party has not lawfully been conveyed the Van Tassel Note, much less been filed of record as a secured creditor.

9. Multiple classes of the GNMA 1998-17 Trust have made and continue to make claims of interest in the rights to the Van Tassel Intangible Obligation and exercise those claims. To exercise claims of rights to the Van Tassel Intangible Obligation, proper assignments of the Van Tassel Mortgage should have been accomplished. Multiple classes of the GNMA 1998-17 Trust are acting as if proper assignments of the Van Tassel Mortgage have been accomplished.

10. The assignment of the Van Tassel Mortgage is a conveyance of an instrument concerning real property which must be recorded to be acted upon. United States Code considers that anyone certifying that a real estate instrument has been assigned when in fact it has not is guilty of a felonious criminal act.

*Title 18 USC Chapter 47 § 1021*
*Whoever, being an officer or other person authorized by any law of the United States*
*to record a conveyance of real property or any other instrument which by such law*
*may be recorded, knowingly certifies falsely that such conveyance or instrument has*
*or has not been recorded, shall be fined under this title or imprisoned not more than*
*five years, or both.*

11. The negotiation of the Van Tassel Note to Ginnie Mae is required both by Ginnie Mae's
own requirements and Pennsylvania State Law.

Ginnie Mae states in its own June 2005 Ginnie Mae Document Custodian Manual,
chapter 3, pages 3-6:

*(2) Document Custodian Procedures – Initial Certifications...*

*(c) Promissory Note (or other evidence of indebtedness) ...*

*iii. Verify that a complete chain of endorsements exists from the loan originator to the*
*pooling issuer. Ginnie Mae requires that the chain of endorsements from the loan*
*originator to the pooling issuer be complete.*

## Multiple Classes of the GNMA 1998-17 Trust cannot Claim Interest
## in either the Van Tassel Note or the Van Tassel Mortgage

12. Multiple classes of the GNMA 1998-17 Trust have an interest in the Van Tassel
Intangible Obligation. However, the transfer of rights to either of the two tangible parts of the
security instrument that evidence the Van Tassel Intangible Obligation from Liberty
Mortgage Corporation to multiple classes of the GNMA 1998-17 Trust is not memorialized
in the Official Records of the Erie County Recorder's Office in a manner which observes
United States Code.

13. Under the Consumer Credit Protection Act Title 15 USC Chapter 41 § 1641(g): any
transfers of the Van Tassel Mortgage Loan to multiple classes of the GNMA 1998-17 Trust
would be in violation of Federal Statute, if those transfers had not been recorded in the
Official Records of the Erie County Recorder's Office within 30 days along with notification
of Myron L. Van Tassel that the transfers had occurred. As there are no recorded assignments
of the Van Tassel Mortgage to multiple classes of the GNMA 1998-17 Trust within 30 days
of June 19, 1998, either there has been a violation of Federal Law or multiple classes of the
GNMA 1998-17 Trust, who have an interest in the Van Tassel Intangible Obligation, are not
the owners of either the Van Tassel Note or the Van Tassel Mortgage.

*Title 15 USC Chapter 41 § 1641(g)*
*(g) **Notice of new creditor***
*(1) **In general***
*In addition to other disclosures required by this subchapter, not later than 30 days*
*after the date on which a mortgage loan is sold or otherwise transferred or assigned*

*to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—*
*(A) the identity, address, telephone number of the new creditor;*
*(B) the date of transfer;*
*(C) how to reach an agent or party having authority to act on behalf of the new creditor;*
*(D) the location of the place where transfer of interest in the debt is recorded; and*
*(E) any other relevant information regarding the new creditor.*

14. The GNMA 1998-17 Trust certifies that an assignment of the Van Tassel Mortgage has been accomplished by selling certificates as shares of the GNMA 1998-17 Trust to investors based on the placement of the Van Tassel Mortgage Loan. However, there have been no assignments of the Van Tassel Mortgage to multiple classes of the GNMA 1998-17 Trust recorded in the Official Records of the Erie County Recorder's Office, although both Ginnie Mae's own requirements (cited below) and Pennsylvania State Law require assignments memorializing the sale and negotiations of the Van Tassel Note along with the acquiring of rights. Therefore, the GNMA 1998-17 Trust appears to have violated Title 18 USC chapter 47 §1021.

> Ginnie Mae states in its own June 2005 Ginnie Mae Document Custodian Manual, chapter 3, pages 3-6:
>
> *If the issuer did not originate the loan, all recorded intervening assignment(s) in the loan file must document a complete chain of title from the originating mortgagee to the issuer... Intervening assignments must be recorded if jurisdictional law requires such recordation*

15. Any electronic transfers of the Van Tassel Mortgage that may have been executed without recording within the Official Records of the Erie County Recorder's Office are void under Uniform Electronic Transactions Act (UETA) USC § 15-96-1-7003:

> *(a) Excepted requirements*
>
> *The provisions of section 7001 of this title shall not apply to a contract or other record to the extent it is governed by —*
> *(3) the Uniform Commercial Code, as in effect in any State, other than sections 1–107 and 1–206 and Articles 2 and 2A.*

16. Multiple classes of the GNMA 1998-17 Trust have an interest in the Van Tassel Intangible Obligation; however, according to Pennsylvania State Law, multiple classes of the GNMA 1998-17 Trust can only be entitled to enforce the Van Tassel Mortgage if they took the Van Tassel Mortgage by way of assignments pursuant to:

*72 P.S. § 4861. Record of mortgages, etc.; filing of record*
*From and after the passage of this act, it shall be the duty of the recorder of deeds, mortgages, and other instruments of writing, in each and every county in this Commonwealth, to keep a daily record, separate and apart from all other records, of every mortgage or article of agreement given to secure the payment of money entered in his office for recording, which said record shall set forth the following information, to wit: The date of*

the mortgage or agreement, the names of the parties thereto, the just sum of money secured, the precise residence of the mortgagee or person to whom interest is payable, a brief description of the real estate upon which such mortgage is secured, and the date or several dates when the said sum or portion of the said sum shall become due and payable; and a like daily record of every assignment of a mortgage or an article of agreement given to secure the payment of money, and also the number of mortgages and agreements, together with the amount of same, and the names of the parties thereto, which shall have been that day satisfied of record; and, for the purpose of obtaining with accuracy the precise residence of all mortgagees, assignees, and persons to whom interest is payable on articles of agreement, it shall be the duty of the recorder of deeds in each county, whenever a mortgage, assignment, or agreement given to secure the payment of money shall be presented to him for record, to refuse the same unless the said mortgage, assignment, or agreement has attached thereto, and made part of said mortgage, assignment, or agreement, a certificate signed by said mortgagee, assignee, or person entitled to interest, or his, her or their duly authorized attorney or agent, setting forth the precise residence of such mortgagee, assignee, or person entitled to interest; said certificate to be recorded with said mortgage, assignment, or agreement; and it shall be the further duty of the recorder, on the first Monday of each month, to file the aforesaid daily record in the commissioners' office, or with the board of revision of taxes of the proper county or city, and one certificate appended thereto shall be all that shall be required.

P.S. Code 1976 § 30-7-10. Validity of conveyances, liens, and other transactions as to subsequent purchasers and creditors.
All deeds of conveyance of lands, tenements, or hereditaments, either in fee simple or for life, all deeds of trust or instruments in writing conveying estate, creating a trust in regard to the property, or charging or encumbering it, all mortgages or instruments in writing in the nature of a mortgage of any real property, all marriage settlements, or instruments in the nature of a settlement of a marriage, all leases or contracts in writing made between landlord and tenant for a longer period than twelve months, all statutory liens on buildings and lands for materials or labor furnished on them, all statutory liens on ships and vessels, all certificates of renunciation of dower, all contracts for the purchase and sale of real property, all assignments, satisfactions, releases, and contracts in the nature of subordinations, waivers, and extensions of landlords' liens, laborers' liens, sharecroppers' liens, or other liens on real property created by law or by agreement of the parties and generally all instruments in writing conveying an interest in real estate required by law to be recorded in the office of the register of deeds or clerk of court in those counties where the office of the register of deeds has been abolished or in the office of the Secretary of State delivered or executed after July 31, 1934, except as otherwise provided by statute, are valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors), or purchasers for valuable consideration without notice, only from the day and hour when they are recorded in the office of the register of deeds or clerk of court of the county in which the real property affected is situated. In the case of a subsequent purchaser of real estate, or in the case of a subsequent lien creditor on real estate for valuable consideration without notice, the instrument evidencing the subsequent conveyance or subsequent lien must be filed for record in order for its holder to claim under this section as a subsequent creditor or purchaser for value without notice, and the priority is determined by the time of filing for record.

21 P.S. § 624. Assignments to be entered on margin of record of mortgage

*From and after the passage of this act, it shall be the duty of the recorders of deeds, of the several counties of this commonwealth, to enter upon the margin of the record of any mortgages, the book and page wherein any assignment or assignments of the same are recorded, together with the date of such assignment, for which service the recorders aforesaid shall charge and be entitled to receive such fee as is provided by law unless the recorder of deeds microfilms the mortgages in which case the assignment shall be recorded without a marginal notation.*

*21 P.S. § 623-1. Assignments to be in writing*
*Hereafter no assignment of any mortgage shall be entered of record in any county of the second class, unless such assignment shall be in writing, and acknowledged by the assignor or assignors before an officer or person duly authorized to take such acknowledgments.*

17. The Van Tassel Mortgage must have been duly assigned to multiple classes of the GNMA 1998-17 Trust for multiple classes of the GNMA 1998-17 Trust to be entitled to enforce the Van Tassel Mortgage.

18. A duly recorded assignment of the Van Tassel Mortgage constitutes constructive notice while an unrecorded assignment of the Van Tassel Mortgage is notice only to immediate parties. With constructive notice, all persons attempting to acquire rights in the Van Tassel Property are deemed to have notice of the recorded instrument. In this way, the Recording Statute is intended to expose the chain of title of the Van Tassel Mortgage to inspection by examination of real property records, protecting innocent junior purchasers and lenders from secret titles and the subsequent fraud attendant to such titles.

19. Assignments of the Van Tassel Mortgage must be accompanied by parallel endorsements of the Van Tassel Note for the Van Tassel Mortgage Loan to remain secured by the Van Tassel Property. Because endorsements are very often undated and because a plaintiff must prove that it had standing at the inception of a case, Marianna & B.R. Co. v. Maund, 56 So. 670, 672 (Fla. 1911), the assignment will be determinative of, or at least evidence that would support or contradict, a plaintiff's claim of standing. No evidence is available to evidence negotiations of the Van Tassel Note to multiple classes of the GNMA 1998-17 Trust. This would have required indorsements and proper negotiations of the Van Tassel Note from Liberty Mortgage Corporation to multiple classes of the GNMA 1998-17 Trust, including any intervening claims of ownership. Of course, for the Van Tassel Mortgage Loan to remain a secured loan, there would have been assignments and transfers of the beneficial interest of the Van Tassel Mortgage, concurrent to negotiations of the Van Tassel Note and those transfers of the Van Tassel Mortgage would have to be entered into the Official Records of the Erie County Recorder's Office.

20. Importantly, mere presentment of the Van Tassel Note (even if shown to be the original), is not in itself proof of an equitable transfer of the Van Tassel Mortgage Loan along with its Security Instrument. This demonstration of possession may be sufficient to enforce the Van Tassel Note, but carries no indicia of ownership or intent to transfer the Van Tassel Mortgage Loan. The Uniform Commercial Code ("UCC") consecrates a preference in commercial transactions for simple possession of indorsed instruments over proof of actual ownership, an exception in the law that was intended to foster free trade of commercial paper.

21. The concept that a noteholder, even one who is not legitimate, may nevertheless bring an action on the Van Tassel Note, is entrenched in commercial law and commonly summarized by the axiom "even a thief may enforce a note." However, the taking of the Van Tassel Home by foreclosure is an equitable remedy, and equity does not allow a "thief" to use a stolen Van Tassel Note to foreclose on the Van Tassel Mortgage lien.

22. The claim that "the mortgage follows the note" is incorrect, as under Pennsylvania Law the Lien follows the Secured Party of record. That equitable right must be proven with evidence of a delivery. Intention does not override the requirements of law.

23. Multiple classes of the GNMA 1998-17 Trust, who have an interest in the Van Tassel Intangible Obligation, cannot show that accompanied negotiations of the rights to the Van Tassel Note and accompanied transfers of the rights to the Van Tassel Mortgage have occurred. The rights to the Van Tassel Intangible Obligation have been stripped from the rights to the Van Tassel Note and the rights to the Van Tassel Mortgage.

## An Assignment Recorded Now Would do Nothing to Transfer the Van Tassel Mortgage to multiple classes of the GNMA 1998-17 Trust

*Black's Law Dictionary defines the term valid as "having legal strength or force, executed with proper formalities, incapable of being rightfully overthrown or sent aside... Founded on trust of fact; capable of being justified; supported, or defended; not weak or defective... of binding force; legally sufficient or efficacious; authorized by law... as distinguished from that which exists or took place in fact or appearance, but has not the requisites to enable it to be recognized and enforced by law."(See Black's Law Dictionary, Sixth Edition, 1990, page 1550)*

24. First and most importantly, the future filing of an "Assignment of Mortgage" would not assign/convey any legal rights to enforce the Van Tassel Note. Enforceability of a lien is dependent upon compliance with state law and local laws of jurisdiction and, contrary to popular misconception, does NOT fall under the jurisdiction of UCC Article 9 or state equivalent 13 Pa. C.S.A. § 9109, as stated in:

> *13 Pa. C.S.A. § 9109. Scope*
> *d) Inapplicability of division. --This division does not apply to any of the following:*
> *(11) The creation or transfer of an interest in or lien on real property, including a lease or rents thereunder, except to the extent that provision is made for:*
> *(i) liens on real property in sections 9203 (relating to attachment and enforceability of security interest; proceeds; supporting obligations; formal requisites) and 9308 (relating to when security interest or agricultural lien is perfected; continuity of perfection);*
> *(iv) security agreements covering personal and real property in section 9604 (relating to procedure if security agreement covers real property or fixtures).*

25. The purpose of an "Assignment of Mortgage" is to simply memorialize the purported sale of the Van Tassel Tangible Promissory Note and the acquiring of rights; it does not cause the sale nor the acquiring of rights. The sale is to be done in accordance with statutory

requirement of law 13 Pa. C.S.A. § 7501, <u>which has not happened.</u> The acquiring of rights is to be done in accordance with statutory requirement of law 13 Pa. C.S.A. § 3203, <u>which has not happened.</u>

> *13 Pa. C.S.A. § 7501. Form of negotiation and requirements of due negotiation*
> *(a) Tangible documents.--The following rules apply to a negotiable tangible document of title:*
> *(1) If the document's original terms run to the order of a named person, **the document is negotiated by the named person's indorsement and delivery**...* (emphasis added)
> *(c) Nonnegotiable documents.--Indorsement of a nonnegotiable document of title neither makes it negotiable nor adds to the transferee's rights.*

26. With Liberty Mortgage Corporation selling <u>only</u> the Van Tassel Intangible Obligation to Government National Mortgage Association, the Van Tassel Tangible Promissory Note is no longer eligible for negotiation per 13 Pa. C.S.A. § 3203(d) as it is now <u>less than the full value</u>. In order to claim the full value of the Van Tassel Tangible Promissory Note, a party would need to <u>both</u> be named as payee to the Van Tassel Tangible Promissory Note <u>and</u> have sole claim to the Van Tassel Intangible Obligation. With no negotiation, transfer, and delivery of the Van Tassel Tangible Promissory Note evidenced through proper indorsement with Government National Mortgage Association being named to the Van Tassel Tangible Promissory Note, a true "Assignment of Mortgage" could not take place.

> *13 Pa. C.S.A. § 3203. Transfer of instrument; rights acquired by transfer*
>
> *(d) Effect of transfer of less than entire instrument.--If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this division and has only the rights of a partial assignee.*

27. The borrower, Myron L. Van Tassel, is NOT the party that created the transferable record that was sold. A third-party, the Account Debtor, created this Intangible Obligation using the Intangible payment stream of the Van Tassel Tangible Promissory Note. Liberty Mortgage Corporation was acting as the Account Debtor pursuant to *13 Pa. C.S.A. § 9102*(c) when they created and sold a transferable record to Government National Mortgage Association.

> *13 Pa. C.S.A. § 9102. Definitions and index of definitions*
> *"Account debtor." A person obligated on an account, chattel paper or general intangible. The term does not include persons obligated to pay a negotiable instrument even if the instrument constitutes part of chattel paper.*

28. Additionally, there are other issues that would render any future "Assignment of Mortgage" invalid...

29. The Original Lender, Liberty Mortgage Corporation, gave up all rights to the Van Tassel Intangible Obligation to Government National Mortgage Association shortly after the June 19, 1998 signing. Once Liberty Mortgage Corporation had given up the rights to the Van Tassel Intangible Obligation, the rights to the Van Tassel Intangible Obligation were stripped away from the rights to the Van Tassel Note and the rights to the Van Tassel Mortgage.

Liberty Mortgage Corporation could transfer beneficial rights to the Van Tassel Note or Mortgage; however, that beneficial interest would not include rights to the Van Tassel Intangible Obligation.

30. The consequences of the rights to the Van Tassel Intangible Obligation being stripped away from the beneficial interests of the Van Tassel Note and Mortgage are that the Note is without an Intangible Obligation to evidence and the Van Tassel Mortgage is without an Intangible Obligation to enforce conditions against.

31. As explained earlier, the beneficial interest of Liberty Mortgage Corporation did not include rights to the Van Tassel Intangible Obligation shortly after the June 19, 1998 signing.

32. Liberty Mortgage Corporation can assign beneficial interest in the Van Tassel Mortgage, albeit with no the rights to the Van Tassel Intangible Obligation, to whomever they please.

33. As explained earlier, any electronic transfers of the Van Tassel Mortgage that may have been executed without recording within the Official Records of the Erie County Recorder's Office are void under Uniform Electronic Transactions Act (UETA) USC § 15-96-1-7003:

> *(a) Excepted requirements*
> *The provisions of section 7001 of this title shall not apply to a contract or other record to the extent it is governed by—*
>> *(3) The Uniform Commercial Code, as in effect in any State, other than sections 1–107 and 1–206 and Articles 2 and 2A.*

34. Additionally, United States Code considers that anyone certifying that a real estate instrument has been assigned when in fact it has not is guilty of a felonious criminal act.

> *Title 18 USC chapter 47 § 1021*
> *Whoever, being an officer or other person authorized by any law of the United States to record a conveyance of real property or any other instrument which by such law may be recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than five years, or both.*

## Interest in the Van Tassel Intangible Obligation Can Not be Rejoined to Interest in the Van Tassel Note or the Van Tassel Mortgage

35. Multiple classes of the GNMA 1998-17 Trust have rights to the Van Tassel Intangible Obligation. Multiple classes of the GNMA 1998-17 Trust were not each and all named as payee on the Van Tassel Note and do not now have rights to the Van Tassel Note. For multiple classes of the GNMA 1998-17 Trust to gain rights to the Van Tassel Note, multiple classes of the GNMA 1998-17 Trust would each and all have to be named payee.

36. There is no possible way for the Van Tassel Note to be transferred to each and all multiple class of the GNMA 1998-17 Trust for the partial rights to the Van Tassel Intangible

Obligation that each owns. Interest in the Van Tassel Intangible Obligation and rights to the Van Tassel Note will remain separate.

37. Because the rights to the Van Tassel Mortgage were separated from the rights to the Van Tassel Intangible Obligation, and will remain separate, the Van Tassel Mortgage is left with no way to enforce its conditions over the obligation which should be evidenced by the Van Tassel Note, making the Van Tassel Mortgage an unenforceable contract.

## No One Can Claim the Right to Enforce the Van Tassel Note

38. The Van Tassel Note has been indorsed by the Original Lender, Liberty Mortgage Corporation, signed by Deborah Gilmour as V.P., The indorsement states "Pay to the Order of Principal Residential Mortgage, Inc., without Recourse". This constitutes a negotiation under 13 Pa.C.S.A. § 7501 concerning negotiable instruments with the intent of Liberty Mortgage Corporation transferring ownership to Principal Residential Mortgage, Inc., With Principal Residential Mortgage, Inc., named as Payee, clearly Liberty Mortgage Corporation has released all interest in the Van Tassel Note.

> *13 Pa.C.S.A. § 7501. Form of negotiation and requirements of due negotiation*
> *(a) Tangible documents.--The following rules apply to a negotiable tangible document of title:*
> *(1) If the document's original terms run to the order of a named person, **the document is negotiated by the named person's indorsement and delivery**...*
> (emphasis added)
> *(c) Nonnegotiable documents.--Indorsement of a nonnegotiable document of title neither makes it negotiable nor adds to the transferee's rights.*

39. Jon K. Baymiler as Executive Vice President & Secretary-Servicing & Capital Markets. The indorsement states "Pay to the Order of Midfirst Bank without Recourse". This constitutes a negotiation under 13 Pa.C.S.A. § 7501 concerning negotiable instruments with the intent of Principal Residential Mortgage, Inc., transferring ownership to Midfirst Bank. With Midfirst Bank named as Payee, clearly Principal Residential Mortgage, Inc., has released all interest in the Van Tassel Note.

40. Liberty Mortgage Corporation transferred its interest in the Van Tassel Intangible Obligation to multiple classes of the GNMA 1998-17 Trust then released and transferred its interest in the Van Tassel Note to Principal Residential Mortgage, Inc., and then Principal Residential Mortgage, Inc., released and transferred its interest in the Van Tassel Note to Midfirst Bank. Interest in the Van Tassel Intangible Obligation was transferred to multiple classes of the GNMA 1998-17 Trust and interest in the Van Tassel Note traveled on without it.

## The Terms of the Van Tassel Mortgage have been Violated and the Van Tassel Mortgage is Unenforceable

41. Liberty Mortgage Corporation has released all interest in the Van Tassel Note to Principal Residential Mortgage, Inc. Principal Residential Mortgage, Inc., has released all interest in

the Van Tassel Note to Midfirst Bank. The Van Tassel Mortgage as a contract can only enforce its contractual terms against the obligation evidenced by the Van Tassel Note.

42. The Van Tassel Mortgage is governed by Pennsylvania State Law. Pennsylvania State Law and Federal Law recognize and require proper recordation of assignment to transfer ownership of the Van Tassel Mortgage. There have been no Assignments of Mortgage for this mortgage filed into public record.

*72 P.S. § 4861. Record of mortgages, etc.; filing of record*
*From and after the passage of this act, it shall be the duty of the recorder of deeds, mortgages, and other instruments of writing, in each and every county in this Commonwealth, to keep a daily record, separate and apart from all other records, of every mortgage or article of agreement given to secure the payment of money entered in his office for recording, which said record shall set forth the following information, to wit: The date of the mortgage or agreement, the names of the parties thereto, the just sum of money secured, the precise residence of the mortgagee or person to whom interest is payable, a brief description of the real estate upon which such mortgage is secured, and the date or several dates when the said sum or portion of the said sum shall become due and payable; and a like daily record of every assignment of a mortgage or an article of agreement given to secure the payment of money, and also the number of mortgages and agreements, together with the amount of same, and the names of the parties thereto, which shall have been that day satisfied of record; and, for the purpose of obtaining with accuracy the precise residence of all mortgagees, assignees, and persons to whom interest is payable on articles of agreement, it shall be the duty of the recorder of deeds in each county, whenever a mortgage, assignment, or agreement given to secure the payment of money shall be presented to him for record, to refuse the same unless the said mortgage, assignment, or agreement has attached thereto, and made part of said mortgage, assignment, or agreement, a certificate signed by said mortgagee, assignee, or person entitled to interest, or his, her or their duly authorized attorney or agent, setting forth the precise residence of such mortgagee, assignee, or person entitled to interest; said certificate to be recorded with said mortgage, assignment, or agreement; and it shall be the further duty of the recorder, on the first Monday of each month, to file the aforesaid daily record in the commissioners' office, or with the board of revision of taxes of the proper county or city, and one certificate appended thereto shall be all that shall be required.*

*P.S. Code 1976 § 30-7-10. Validity of conveyances, liens, and other transactions as to subsequent purchasers and creditors.*
*All deeds of conveyance of lands, tenements, or hereditaments, either in fee simple or for life, all deeds of trust or instruments in writing conveying estate, creating a trust in regard to the property, or charging or encumbering it, all mortgages or instruments in writing in the nature of a mortgage of any real property, all marriage settlements, or instruments in the nature of a settlement of a marriage, all leases or contracts in writing made between landlord and tenant for a longer period than twelve months, all statutory liens on buildings and lands for materials or labor furnished on them, all statutory liens on ships and vessels, all certificates of renunciation of dower, all contracts for the purchase and sale of real property, all assignments, satisfactions, releases, and contracts in the nature of subordinations, waivers, and extensions of landlords' liens, laborers' liens, sharecroppers' liens, or other liens on real property created by law or by agreement of the parties and generally all instruments in writing conveying an interest in real estate required by law to be*

20
PLAINTIFF'S ORIGINAL COMPLAINT

*recorded in the office of the register of deeds or clerk of court in those counties where the office of the register of deeds has been abolished or in the office of the Secretary of State delivered or executed after July 31, 1934, except as otherwise provided by statute, are valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors), or purchasers for valuable consideration without notice, only from the day and hour when they are recorded in the office of the register of deeds or clerk of court of the county in which the real property affected is situated. In the case of a subsequent purchaser of real estate, or in the case of a subsequent lien creditor on real estate for valuable consideration without notice, the instrument evidencing the subsequent conveyance or subsequent lien must be filed for record in order for its holder to claim under this section as a subsequent creditor or purchaser for value without notice, and the priority is determined by the time of filing for record.*

*21 P.S. § 624. Assignments to be entered on margin of record of mortgage*

*From and after the passage of this act, it shall be the duty of the recorders of deeds, of the several counties of this commonwealth, to enter upon the margin of the record of any mortgages, the book and page wherein any assignment or assignments of the same are recorded, together with the date of such assignment, for which service the recorders aforesaid shall charge and be entitled to receive such fee as is provided by law unless the recorder of deeds microfilms the mortgages in which case the assignment shall be recorded without a marginal notation.*

*21 P.S. § 623-1. Assignments to be in writing*
*Hereafter no assignment of any mortgage shall be entered of record in any county of the second class, unless such assignment shall be in writing, and acknowledged by the assignor or assignors before an officer or person duly authorized to take such acknowledgments*

43. The Van Tassel Mortgage is part of the overall Van Tassel Mortgage Loan Instrument. While supposedly delivering the Van Tassel Note to Principal Residential Mortgage, Inc., Liberty Mortgage Corporation did not deliver the Van Tassel Mortgage to Principal Residential Mortgage, Inc., When Liberty Mortgage Corporation indorsed the Van Tassel Note to Principal Residential Mortgage, Inc., without assigning the Van Tassel Mortgage, Liberty Mortgage Corporation attempted to deliver less than the entire Van Tassel Mortgage Loan Instrument. By delivering the Van Tassel Note to Principal Residential Mortgage, Inc., without delivering the Van Tassel Mortgage, Liberty Mortgage Corporation was also attempting to deliver the Van Tassel Note without delivering the rights to enforce. Likewise, while supposedly delivering the Van Tassel Note to Midfirst Bank, Principal Residential Mortgage, Inc., did not deliver the Van Tassel Mortgage to Midfirst Bank. When Principal Residential Mortgage, Inc., indorsed the Van Tassel Note to Midfirst Bank without assigning the Van Tassel Mortgage, Principal Residential Mortgage, Inc., attempted to deliver less than the entire Van Tassel Mortgage Loan Instrument. By delivering the Van Tassel Note to Midfirst Bank without delivering the Van Tassel Mortgage, Principal Residential Mortgage, Inc., was also attempting to deliver the Van Tassel Note without delivering the rights to enforce.

44. Under 13 Pa.C.S.A. § 3203 (d), a negotiation of the Van Tassel Note or a negotiation of the Van Tassel Loan can not occur without the transfer of the entire interest in the Van Tassel Note or transfer of the entire interest in the Van Tassel Loan.

*13 Pa.C.S.A. § 3203. Transfer of instrument; rights acquired by transfer*
*(d) Effect of transfer of less than entire instrument.--If a transferor purports to*
*transfer less than the entire instrument, negotiation of the instrument does not occur.*
*The transferee obtains no rights under this division and has only the rights of a*
*partial assignee.*

45. When Liberty Mortgage Corporation indorsed the Van Tassel Note to Principal Residential Mortgage, Inc., without assigning the Van Tassel Mortgage, Liberty Mortgage Corporation purported to deliver the Van Tassel Note without delivering the rights to enforce the Van Tassel Mortgage. Likewise, when Principal Residential Mortgage, Inc., indorsed the Van Tassel Note to Midfirst Bank without assigning the Van Tassel Mortgage, Principal Residential Mortgage, Inc., purported to deliver the Van Tassel Note without delivering the rights to enforce the Van Tassel Mortgage. Negotiation of either the Van Tassel Mortgage or negotiation of the Van Tassel Note did not occur.

46. Beside the fact that the indorsements did not accomplish a negotiation of the Van Tassel Note, Liberty Mortgage Corporation still no longer has an entire interest in the Van Tassel Note. Liberty Mortgage Corporation must have an entire interest in the Van Tassel Note for a negotiation to occur. The intangible interest in the Van Tassel Note has been transferred to multiple classes of the GNMA 1998-17 Trust. Liberty Mortgage Corporation can no longer claim an entire interest in the Van Tassel Note. Neither Liberty Mortgage Corporation nor Principal Residential Mortgage, Inc., nor Midfirst Bank can now accomplish a negotiation of the Van Tassel Note.

47. Interest in the Van Tassel Mortgage is no longer with Liberty Mortgage Corporation, yet no one else has any authority to enforce its terms, while the interest in the Van Tassel Note has been negotiated to Midfirst Bank. The Van Tassel Mortgage is an unenforceable contract, no longer tied to an obligation to enforce its contractual terms over.

48. Under long existing contract law, if the terms of a contract are violated, affecting the conditions under which the Payor is obligated, without the properly evidenced consent of the Payor, that contract is void and cannot be returned to without the consent of the Payor. Even if ownership of the Van Tassel Note and the Van Tassel Mortgage could be rejoined, the Van Tassel Mortgage, as a now unenforceable contract, no longer being tied to an obligation to enforce its contractual terms over, can not be returned to being an enforceable contract without Myron L. Van Tassel's consent

## With Interest in the Van Tassel Intangible Obligation Stripped Away and No Way to Enforce the Conditions Under the Van Tassel Mortgage, the Van Tassel Mortgage Contract is a Nullity

49. The Interest in the Van Tassel Intangible Obligation was separated from the rights to the Van Tassel Note and the rights to the Van Tassel Mortgage, leaving the Van Tassel Note no

Intangible Obligation to evidence and the Van Tassel Mortgage no Intangible Obligation to enforce conditions over.

50. Liberty Mortgage Corporation retained no beneficial interest in the Van Tassel Intangible Obligation after selling the Van Tassel Intangible Obligation to Government National Mortgage Association shortly after the June 19, 1998 signing. No acceptable assignments of the Van Tassel Mortgage to each and all multiple class of the GNMA 1998-17 Trust have been recorded into the Official Records of the Erie County Recorder's Office. There is no evidence of negotiations of the Van Tassel Note to each and all multiple class of the GNMA 1998-17 Trust. With no properly-recorded owner of the Van Tassel Mortgage, there is no one to enforce the conditions over the Van Tassel Intangible Obligation which is no longer evidenced by the Van Tassel Note. The Van Tassel Intangible Obligation is no longer secured by the Van Tassel Property.

51. Having no specific properly-secured owner of the limited beneficial interest of the Van Tassel Note, there is no way to enforce the stripped-away Van Tassel Intangible Obligation through the Van Tassel Note.

Exhibit 2 at pp. 13-32.

41.    Plaintiff also attaches, as **EXHIBIT** 3, in support of the Chain of Title Analysis and Mortgage Analysis and Mortgage Fraud Investigation, the Affidavit of Joseph R. Esquivel Jr.

## VIOLATIONS OF THE FAIR DEBT COLLECTIONS ACT

42.    On or about June 19, 1998, Plaintiff entered into a consumer credit transaction with Liberty Mortgage Corporation by obtaining a $87, 210.00 mortgage loan secured by the Property.

43.    Defendant MidFirst Bank violated various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq., as follows:

44.    Defendants are debt collectors as defined in 15 U.S.C. §1692a (6).

(6) The term "debt collector" means any person who…regularly collects or attempts to collect, directly or indirectly, debt owed or due or asserted to be owed of due another…

45.    Defendant MidFirst Bank filed a Complaint in Mortgage Foreclosure on February 5, 2016, in the Court of Common Pleas, Erie County, Pennsylvania, alleging that the Mortgage was

assigned to MidFirst and recorded on January 21, 2012. *See Complaint in Mortgage Foreclosure*, attached hereto as Exhibit 6. Curiously there was not allegation that MidFirst was the holder of the Note.

46      Defendant MidFirst filed this Complaint with the knowledge that a Ginnie Mae trust was the holder of the Note and that it was sold to Ginnie Mae shortly after execution of the Note on June 19, 1998. MidFirst knew, or should have known, that a Ginnie Mae trust was the holder of the Note as Defendant Midland Mortgage, a division of MidFirst, was the servicer of the Note and an approved subservicer for Ginnie Mae.

47.     By these actions, Defendant MidFirst violated 15 U.S.C. § 1692e (2)(A) by misstating the amount or legal status of any debt. By these actions Defendants also violated 15 U.S.C. § 1692e (10) by using deceptive means in an attempt to collect a debt which was not owed to MidFirst Bank.

48.     Defendant has been harmed by these actions in that the Complaint was accepted and a sale of the Property is pending.

49.     As a direct and proximate result of Defendants' violations, Plaintiff incurred and continues to incur damages in an amount not yet ascertained, including, without limitation, statutory damages.

### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

50.     Plaintiff has proved beyond any reasonable doubt the subject of Plaintiff's Complaint that Defendants have acted wrongfully prior and leading up to a proposed "sale" of Plaintiff's property, contrary to the conditions precedent of the terms of the subject Mortgage, Pennsylvania Code Annotated, the FDCPA, other Federal laws and the U.C.C.

51.    Defendants have exploited and abused their alleged authority to demand a proposed sale of Plaintiff's property in fact and deed, using the so-called "sale" as a tool and instrument of fraud.  Under these circumstances this Honorable Court should give no credence whatsoever to the alleged and illegal proposed "sale" of Plaintiff's property, the result of a carefully designed fraud and conclusively powerless to stand the scrutiny to be effective at no time.

52.    Declaratory Relief is necessary and appropriate at this time because without judicial resolution all Parties herein will remain unclear and in dispute as to their respective rights, interests, and obligations.  Furthermore, whether the "*Mortgage*" factually or legally amounted to assign anything whatsoever, and further whether it exists as a "Cloud" on Plaintiff's Land Record/Real Property and hence should be removed.

53.    Plaintiff's "Property" is at risk of being further influenced, impacted, affected and/or wrongfully resold, transferred and/or assigned by and through Defendants named herein, any the Agents or other individuals or Entities claiming, but factually and legally not qualifying held to, or determined as "*Bona Fide* Purchases", individuals and/or Entities.

54.    On personal knowledge, Plaintiff will suffer irreparable harm in absence of the requested relief because Plaintiff is threatened with the eviction of his Property by not having had a marketable legal Title returnable to the *status quo* when it was let to Defendants.  The original *status quo* was and is unique and valuable, the loss of which cannot be fully compensated by money damages.

55.    Plaintiff herein further alleges, that an actual controversy has arisen, and now exists and remains unresolved between Plaintiff and all Defendants and any of their Agents as well as other individuals claiming, but factually and legally could not qualify, held to, or determined as "Bona Fide Purchasers", and other such claiming "BFPs", individuals and/or business entities

concerning the legal effect and true nature of the *"Mortgage"* as being a "Cloud" on Plaintiff's

Land Record/Real Estate Property, all of whom are relying on the validity and legality of subject

*"Mortgage"*.

56.     As such legally and equitably the "Mortgage" referenced above should be Cancelled and

Expunged from Plaintiff's Land Record/Real Property Title.

57.     All Defendants named herein and any of their Agents, as well as other Individuals or

Entities all respectively dispute the contentions of the Plaintiff and all other Defendants and all

other Parties and their Counterparts, hence the Plaintiff's suit for declaratory judgment.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58.     Defendants have compounded their acts regarding wrongful foreclosure with an attempt

to proceed with an illegal eviction, their intentional acts have caused additional inflection of

stress.

59.     Defendants have purposefully inflicted torturous stress upon Plaintiff that has affected

Plaintiff's health causing anxiety attacks, insomnia, vomiting and most everything related to

physical, mental and emotional health, including damaged relationships with family and friends

60.     Defendants have from the onset acted wrongfully with knowledge, it would be absurd

that Defendants would not know they brought a wrongful foreclosure via a judicial action,

furthering compounding their heinous acts with an illegal eviction.  Thereby, leaving Plaintiff

homeless and retendered loss of individual independency regarding the constitutional right to

defend Plaintiff's real property and denying Plaintiff the right to pursue individual freedom and

happiness.

61.     Defendants are liable for damages as from the onset Defendants have acted wrongfully

with knowledge. Therefore, Plaintiff is faced with suffering the loss of Plaintiff's home by

wrongful foreclosure, compounded by impending illegal sale and eviction, and numerous medical maladies. As a result, Plaintiff prays the Honorable Court to restore Plaintiff's home to Plaintiff the rightful owner and three time the actual damages of the real property and Ten Million Dollars ($10,000,000.00) in punitive damages.

## SUMMATION

Defendants have ignored and obfuscated the true issues of the Plaintiff's causes of action. This has been accomplished by Defendants' employment of misrepresentation of material facts, avoidance of addressing the actual causes of action contained in their foreclosure upon Plaintiff. Defendants cannot prove their findings of alleged facts as they are not based upon facts but on misrepresentation and hyperbole. From the onset Defendants' legal counsel, under the guise of professional responsibility have methodically moved to finalize a wrongful foreclosure. These egregious actions by Defendants are premeditated acts in order to effect spoliation of the true facts of the issues at hand to cause the destruction of Plaintiff's just causes. Spoliation is an effective litigation practice which threatens to undermine the integrity of civil trial process. It is a form of cheating which blatantly compromise the ideal of trial regarding the search for truth. In fact, and deed Defendants and their legal counsel have wrought disingenuous pleadings in an attempt to finesse and to wrongfully prejudice due process to the point that the Defendants have obviously employed the Florida Authorities who unknowingly processed a wrongful foreclosure upon the Plaintiff. Therefore, the wrongful foreclosure resulted using the Florida Authorities as an instrument and tool of fraud by Defendants resulting in fraud upon the Court and the Plaintiff.

Defendant have ignored and obfuscated Plaintiff's previous attempt to obtain information under "Validation of Debt"/" Proof of Claim Request" of the Fair Debt Collection Practices Act.

Due to the action of Defendants to have ignored and obfuscated Plaintiff's request for

information Plaintiff's right to due process has been denied by Defendants and Plaintiff's rights

under the Constitutions of the United States and the Constitution of the State of Florida have

been violated not allowing Plaintiff to defend his title to real property.

Plaintiff has portrayed and asserted *prima facie* evidence beyond any reasonable doubt the

plethora of violations regarding the Florida Code, United States Codes, United States

Constitutional issues and the Uniform Commercial Code as adopted by the State of Florida.

Further, also proven by the evidence of fact Plaintiff's Mortgage and Note have been bifurcated

by Defendants in this action. This illegal action has been ruled upon by the United States

Supreme Court, to WIT:

> *Carpenter v. Longan*, 83 U.S 271, 21 L. Ed. 313, 1972 U.S. LEXIS 1157 (1873). In
> where the repeated quote is, "The note and mortgage are inseparable, the former as
> essential, the latter as an incident. An assignment of the note carries the mortgage with it,
> while an assignment of the latter is a nullity."

## CONCLUSION

This case should be adjudicated in favor Plaintiff because the Note was unenforceable

and because the Defendants lacked legal standing under the color of law and the Domain of

Fraud.

A.    The Note and Mortgage are unenforceable because:

1.    Securitization removes the note holder from the note thereby rendering the note

unenforceable.

2.    The note cannot he severed from the mortgage to attempt to enforce the mortgage

without the note holder.

3.    The note and mortgage are unenforceable because the mortgagor never consented to the securitization of the mortgage.

4.    The mortgagor never consented to the restrictions placed upon the note and mortgage by the Pooling Agreement.

5.    The incidence of financial loss is separated from the authority to modify the loan and foreclose.

6.    A transferee of the mortgage, subsequent to its origination, caused others to modify the mortgage contract without the consent of the mortgagor and without consideration.

7.    Securitization clogs the equity of redemption.

8.    A subsequent transferee of the mortgage converted the mortgage by restricting it transferability and dividing incidence of loss from authority to foreclose without the consent of the mortgagor.

9.    The relief sought does not provide a windfall to the debtor.

B.  Defendants lacked standing to foreclose because:

(1) Defendants do not own or hold the note; and

(2) Defendant do not and cannot act as the agent for the certificate holders for purposes of foreclosure.

## PRAYER

*WHEREFORE*; Plaintiff prays the Court for Judgment, Decree and an Order and relief as against all Defendants named herein and any of their Agents:

A) For Declaratory Relief by way of a Judicial Determination as follows:

PLAINTIFF'S ORIGINAL COMPLAINT

That the *"Mortgage" was "Voidable"* and therefore a "**Cloud**" on Plaintiff's Land Record/Real Property Title;

B) For an Order, Decree and or Judgment thereby voiding and annulling the sale of Plaintiff's real property returning the Title to the Subject Property to Plaintiff the legal rightful owner, "Canceling" and "Expunging" the relative *"Mortgage", illegally Filed & Recorded* from Plaintiff's Land Record/Real Property Title held, maintained and currently on record with the Erie County Recorder's Office;

C) For an Order, Decree and or Judgment thereby granting Plaintiff actual and punitive damages due as requested herein.

Respectfully presented by Plaintiff the ⎽16⎽ day of October 2017.

MYRON VAN TASSEL
149 E. Third Street
Waterford, PA 16441
Phone: 814-881-4646
Email: myronhomeschool@roadrunner.com

## VERIFICATION

The Plaintiff, has read the **PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF PURSUANT TO TITLE 28, US CODE SECTION 2201, 2202, 1331, 1332, 1367** and know the contents thereof to be true; and the same is true of Plaintiff's own knowledge, except to the matters which are therein stated on our information and belief and as to those matters, Plaintiff believes them to be true. The foregoing is true, correct, complete and not misleading.

Sealed by the voluntary act of my own hand(s) on this ⎽16⎽ day of October, in the Year of

our Lord, two thousand and Seventeen.

MYRON VAN TASSEL

30
PLAINTIFF'S ORIGINAL COMPLAINT

149 E. Third Street
Waterford, PA 16441
Phone: 814-881-4646
Email: myronhomeschool@roadrunner.co

Either known to me or having proper identification, Affiant personally came before me and

having been duly sworn did state and affirm the above statements.

On this the _16th_ day of October 2017.

_Janet m Parke_
NOTARY

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Janet M. Parke, Notary Public
Waterford Boro, Erie County
My Commission Expires March 25, 2021
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

State of Pennsylvania                    SEAL:
County of Erie

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing SERVICE LIST

furnished

by process of service of SUMMONS to the above listed persons and to the Interested Parties on

the SERVICE LIST, this ___*16*___ day of October 2017.

MYRON VAN TASSEL

**SERVICE LIST**

By Process of Service SUMMONS:

PURCELL, FRUG & HALLER
ATTN: LEON P. HALLER
1719 North Front Street
Harrisburg, PA 17102

LIBERTY MORTGAGE CORPORATION
ATTN: GENERAL COUNSEL
3818 Liberty Street
Erie, PA 16509

MIDFIRST BANK
ATTN: M. RANDOLPH SPARKS
501 NW Grand Blvd.
Oklahoma City, Oklahoma 73118

MIDLAND MORTGAGE
ATTN: M. RANDOLPH SPARKS
501 NW Grand Blvd.
Oklahoma City, Oklahoma 73118

GOVERNMENT NATIONAL MORTGAGE
ASSOCIATION
ATTN: LEGAL DEPARTMENT
425 3rd Street, SW
Washington, DC 20024

GINNIE MAE REMIC TRUST 1998-17
c/o GOVERNMENT NATIONAL MORTGAGE
ASSOCIATION
ATTN: LEGAL DEPARTMENT
425 3rd Street, SW
Washington, DC 20024